UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6198-CR-HURLEY

UNITED STATES OF AMERICA,  :

    Plaintiff,  :

v.  :

JULIE COLLINS,  :

    Defendant.  :
_____/



# SENTENCING MEMORANDUM

Julie Collins ("Julie"), through counsel, respectfully submits the following memorandum of law in support of her objection to the Presentence Investigation Report prepared in this case. The defendant hereby proffers her cooperation and "safety valve" statements as her testimony in support of the reductions requested.

## MITIGATING ROLE

The defendant respectfully requests an adjustment to the base offense level for her minor role in the offense pursuant to U.S.S.G. § 3B1.2. Section 3B1.2 provides as follows:

Based on the defendant's role in the offense, decrease the offense level as follows:

    (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

    (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

The defendant requests that the Court reduce the offense level by two or three levels because she was a minor participant in the offense. Significantly, other people participated in the subject offense. According to the P.S.I. (Par. 30), Julie "acted under the direction of her brother, Gregory Reid Collins". The Sentencing Guidelines define "participants" in an offense as a more expansive group than individuals caught and charged by the federal authorities:

> A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g. an undercover law enforcement officer) is not a participant.

U.S.S.G. § 3B1.1, comment (n.1). In essence, the Guidelines require the trial court to consider all the criminally culpable participants in the criminal scheme, even those who were not caught. As the Eleventh Circuit has stressed, a trial court must look to all the *relevant conduct* of the necessary participants in the underlying scheme, not simply the elements in the indictment. United States v. Costales, 5 F.3d 480, 484 (11th Cir. 1993) (emphasis added). The Guidelines specifically direct courts to make individual determinations in each case, and the trial court must consider the defendant's conduct in relationship to the participants involved in the criminal activity. *See* U.S.S.G. Ch. 3, Part B, Introductory Commentary; U.S.S.G. § 1B1.3.

Julie was a minor participant and should receive a two or three level downward adjustment. Application Note 3 of § 3B1.2 provides that a ". . . minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, Application Note 3. The key to the inquiry is relative culpability: was the defendant less culpable than most other participants? The Court must consider the culpability of all

persons involved in the offense, including the person who recruited and provided the drugs for transport, the source of the drugs, and the destination of the drugs. There were several participants in this offense and most, if not all, of them were more culpable than the defendant. Based on a comparison of the defendant's culpability to that of other participants, she was less culpable than most other participants in the offense. Consequently, at a minimum, a two level reduction under § 3B1.2 is warranted.

For the above reasons, Julie Collins hereby requests a two level downward departure from her offense level for her minor role in the offense.

## DOWNWARD DEPARTURE

This defendant is unique in that her poor physical condition and mental and emotional health are an issue in regards to her conditions of confinement. She suffers from severe asthma, anxiety and allergies. Additionally, Julie has a history of depression, that has been aggravated since her arrest, and suffers from panic attacks, sleep difficulties and had been under the care of a psychiatrist prior to her incarceration. The P.S.I. (Par.55-58) establishes that Julie is suffering from an extreme physical impairment such that a downward departure is warranted.

U.S.S.G. §5H1.4 states in pertinent part:

> Physical condition or appearance is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

An extraordinary physical impairment may warrant departure under § 5H1.4, in the case of a seriously infirm defendant. The Tenth Circuit has held that departure under § 5H1.4 is not limited

to physical impairments so severe as to warrant a non-custodial sentence – an impairment may be "extraordinary" yet warrant only a reduction in, not elimination of, the term of imprisonment. United States v. Slater, 971 F.2d 626, 634-35 (10th Cir. 1992) (remanded). The court also set out a two-part test: "the district court should first make a factual finding to decide whether [the defendant's] physical and mental disabilities constitute 'an extraordinary physical impairment.' . . . [I]t should then consider whether the condition warrants a shorter term of imprisonment or an alternative to confinement." The court later held that the Slater test must also be followed when a requested § 5H1.4 departure is denied and added that § 5H1.4 "is concern[ed] about costs of imprisonment, not just concern for fairness to the defendant." See United States v. Fisher, 55 F.3d 481, 485 (10th Cir. 1995) (remanded: "the court failed to comply with our unambiguous mandate in § 5H1.4 cases as set out in United States v. Slater" by not making findings and explaining its reasoning before denying departure).

The Ninth Circuit agreed with Slater, and added that a court "may consider any number of circumstances," not just whether the Bureau of Prisons can accommodate defendant's disability. United States v. Martinez-Guerrero, 987 F.2d 618, 620-21 (9th Cir. 1993) (affirmed: departure properly denied – prison could accommodate legally blind defendant). See also, United States v. Russell, 156 F.3d 687, 694 (6th Cir. 1998) ("We do not believe that deafness, without more, can ever serve as the basis for a § 5H1.4 downward departure . . . . In this case, the district court specifically recommended that the United States Bureau of Prisons take Russell's disability into consideration and place him at a facility that is equipped to accommodate his needs . . . . Russell does not allege that the prison services have been inadequate to accommodate his disability, nor does he allege that the prison has failed to protect him against any attackers."). Cf. United States v. Rioux, 97 F.3d 648,

663 (2d Cir. 1996) (combination of serious health problems requiring ongoing monitoring plus prior "charitable and civic good deeds" sufficient to allow departure to level allowing home confinement, probation, and community service); United States v. Greenwood, 928 F.2d 645, 646 (4th Cir. 1991) (affirmed departure for double amputee whose required treatment at Veterans Administration Hospital would be jeopardized by incarceration).

The Sixth Circuit held that a defendant who is HIV-positive but otherwise in good health was properly refused a downward departure under § 5H1.4. Defendant "would only be entitled to a departure if his HIV had progressed into advanced AIDS, and then only if his health was such that it could be termed as an 'extraordinary physical impairment.'" United States v. Thomas, 49 F.3d 253, 261 (6th Cir. 1995) (citing United States v. DePew, 751 F.Supp. 1195, 1199 (E.D. Va. 1990)). Accord United States v. Rivera-Maldonado, 194 F.3d 224, 235-36 (1st Cir. 1999); United States v. Rabins, 63 F.3d 721, 72-29 (8th Cir. 1995) (affirming denial of departure for defendant who had AIDS but was not yet ill – "Certainly AIDS is a basis for a departure under § 5H1.4 when it 'has progressed to such an advanced stage that it could be characterized as an "extraordinary physical impairment."' . . . It was the District Court's duty . . . to assess Johnson's condition at the time of sentencing," and it properly concluded that "at the time of sentencing, Johnson's condition was not serious enough to justify a departure"); United States v. Woody, 55 F.3d 1257, 1275 (7th Cir. 1995) (affirmed).

Julie's mental health problems have been a concern for her and her family. Her psychiatrist, Dr. Levi Kahane, stated in his January 18, 2001, letter (see Notice of Filing Letters for Sentencing)

> She has been prescribed several medications in the past with no avail.
> She, now, is on the following medications with successful results:

5

>XANAX .5 mg 1 to 6 po qd
>AMBIEN 10 mg 1 po qhs
>
>The consequences for removing her from these medications can be detrimental to the patient health.

As this court will recall, at the plea, counsel was very concerned as to the plans for incarceration for Julie. Julie waived whatever chance she had to remain on bond while awaiting sentence as a result of the assurance of the Deputy United States Marshall that she would be transported to the Federal Detention Center that evening, see the doctor as soon as possible, her proscribed medicines would be taken with her, and her Albuterol inhaler( referred to as an "rescue inhaler") would always be allowed to remain with her. A chronological list of events follow:

1. On January 19, 2001, Friday, Julie pled guilty. After court she was taken to the West Palm Beach County jail and held in the "tank" overnight. Her medications and inhaler were taken from her. She had to "cold turkey" the Xanax proscribed for her anxiety. She suffered an asthma attack, was threatened by the other inmates (apparently they thought she had T.B.), and was transferred to a cell by herself.

2. On January 20, 2001, Saturday, Julie was transferred to a regular cell again without her inhaler or her proscribed medications. That evening she was transferred to the Palm Beach County Stockade. At the Stockade she still was not given her inhaler or medications and she still had not seen a doctor.

3. On January 21, 2001, Sunday, Julie was transferred within the Stockade to a room with twenty (20) other women inmates, including prostitutes, drug addicts, and violent offenders. She did receive her inhaler but did not receive any other medications.

4. On January 22, 2001, Monday, Julie, still in the Stockade and still without her proscribed medications and suffering withdrawal, began to have tremors. Julie's mother, Sandy Collins, called counsel and informed him that Julie was at the Stockade and "not doing very well". Counsel called United States Marshall James Tassone, and informed him of the situation.

5. On January 23, 2001, Tuesday, Julie was taken to the infirmary. In the evening Julie was given her first dose of Xanax in four days.

6. On January 24, Wednesday, Julie was transferred to the Federal Detention Center in Miami. Julie did receive Xanax at F.D.C. though they weaned her off the medication with in one month.

7. As of March 6, 2001, Julie had still not seen the psychiatrist to "talk to" about her problems.

Therefor, pursuant to §5H1.4, Julie specifically requests this court to find that she is suffering from an extraordinary physical impairment such that a downward departure is appropriate.

Additionally, this court has the authority to depart in any case not falling within the "'heartland', a set of typical cases embodying the conduct that each guideline describes" which were "carved out" by the Sentencing Commission. U.S.S.G. Introduction, p.6, Ch. 1, Pt. A, § 4(b).

> "When the court finds an atypical case . . . the court may consider whether a departure is authorized . . . the Commission does not intend to limit the kinds of factors, whether or not mentioned elsewhere in the guidelines, that could constitute grounds for the departure in the unusual case." Id. at 5.

Both Congress and the Sentencing Commission agreed there would be times when various factors about a defendant would make a particular sentence inappropriate. Thereafter, both Congress and the Sentencing Commission set out factors which, if substantially different than the normal or "heartland" case should be considered as a basis for a downward departure from the usually appropriate range. U.S.S.G. Introduction, p.6, Ch. 1, Pt. A, § 4(b), and 18 U.S.C. § 3553(b). The guidelines provide:

> The sentencing statute permits a court to depart from a guideline-specific sentence . . . when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that

described."

The United States Supreme Court addressed the issue of guideline departures in *Koon v. United States*, 116 S.Ct. 2035 (1996), ( which also was a §5H1.4 departure authorized because of the extreme vulnerability of the defendant) by clarifying and reemphasizing that sentencing courts have broad discretion to tailor appropriate sentences to the facts of a particular case. This case is unique, unusual and outside the "heartland" such that a departure is warranted. Julie was essentially lied to about her conditions of confinement. If she or counsel had known how damaging this portion of the confinement was going to be to her health, she would have opted to pursue voluntary surrender after designation by the Bureau of Prisons. Julie suffered from the indifference of the system; it should not have happened.

WHEREFORE, Julie Collins requests that she receive a departure from the applicable guideline range for conduct outside the "heartland".

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: *Samuel J. Smargon*
Samuel J. Smargon
Assistant Federal Public Defender
Florida Bar No. 150230
101 N.E. 3rd Avenue
Suite 202
Fort Lauderdale, Florida 33301
(954) 356-7436
(954) 356-7556 (fax)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed on this 9 day of March, 2001 to Nancy Vorpe-Quinlan, Esquire, United States Attorney's Office, 500 Australian Avenue, Suite 440, West Palm Beach, Florida 33301 and to Sheila Tierney, United States Probation Office, 501 South Flagler Drove, Suite 400, West Palm Beach, Florida 33132.

Samuel J. Smargon

S:\SMARGON\Collins\Sentencing.01.wpd